IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Cassiopia Rhoads,<br><br>      Plaintiff,<br><br>v.<br><br>Southern Health Partners; Robert J. Williams, M.D.; Brandi Galloway; Donna Wright; Chanate Buchanan; Tonetta Buggs; Tamara Erikson; Erik Riddell; Jessica Whitaker,<br><br>      Defendants. | C/A No.: 8:22-cv-1409-SAL<br><br><br>**ORDER** |

  In 2019, while she was a pretrial detainee at the Aiken County Detention Center ("ACDC"), Cassiopa Rhoads ("Plaintiff") developed an abscess on the side of her head. During the thirty days she was held at ACDC, Plaintiff received only minimal treatment from the facility's medical staff. She did not receive significant medical intervention until she experienced two serious medical events within a few hours, at which point she was transported to a hospital. By then, the abscess had grown substantially, protruding from her head with a circumference roughly the size of a grapefruit. At the hospital, Plaintiff was diagnosed with multiple abscesses and severe sepsis, which ultimately led to the removal of part of her skull. [ECF No. 1 at 9.]

  In 2022, Plaintiff filed this action under 42 U.S.C. § 1983, alleging deliberate indifference to her serious medical needs by five ACDC correctional officers, three medical staff members, and Southern Health Partners ("SHP"), the employer of the medical staff. The court previously granted summary judgment for Defendants Chanate Buchanan, Tonetta Buggs, Tamara Erickson, Erik Riddell, and Jessica Whitaker—all non-medical correctional officers at ACDC. [ECF No. 118.] Additionally, with Plaintiff's consent, the court dismissed Defendants SHP, Dr. Robert J.

1

Williams, Brandi Galloway, and Donna Wright. *Id.* Plaintiff subsequently filed a motion for reconsideration, asking the court to revisit its summary judgment ruling as to Defendants Riddell and Whitaker, both of whom held supervisory positions among the correctional staff at ACDC.

For the reasons below, the court grants Plaintiff's motion for reconsideration and vacates its prior order granting summary judgment to Defendants Riddell and Whitaker.[1] *See* ECF No. 118. This order sets forth the court's rationale for denying summary judgment as to these Defendants.

## STANDARD OF REVIEW

**I.     Motion for Reconsideration**

Motions to reconsider are governed by Rule 59(e) of the Federal Rules of Civil Procedure. The Fourth Circuit Court of Appeals has interpreted Rule 59(e) of the Federal Rules of Civil Procedure to allow the court to alter or amend an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Pacific Ins. v. Am. Nat'l Fire Ins.*, 148 F.3d 396, 403 (4th Cir. 1998)).

Relief under Rule 59(e) is "an extraordinary remedy which should be used sparingly." *Pacific Ins.*, 148 F.3d at 403 (internal marks omitted). It should not be used to raise arguments, to present evidence, or to argue a theory which could have been presented before the issuance of judgment. *Id.* Further, "[m]ere disagreement does not support a Rule 59(e) motion." *Becker*, 305 F.3d at 290 (quoting *Hutchinson v. Stanton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

---

[1] The court will not disturb the earlier dismissal of Defendants SHP, Dr. Williams, Galloway, Wright, Buchanan, Buggs, or Erikson.

**II.     Summary Judgment**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of proving to the court that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

**DISCUSSION**

There have been no intervening changes in controlling law, nor has any new evidence emerged since the court granted summary judgment for Defendants. Thus, the court may grant relief under Rule 59(e) only to correct a clear error of law or to prevent manifest injustice. Here, Plaintiff's motion for reconsideration persuades the court that a manifest injustice has occurred. Therefore, the court reconsiders its prior ruling and now reaches a different conclusion as to Defendants Riddell and Whitaker. Before addressing the legal analysis, the court reviews the relevant facts.

**I.     Facts**

    **A.     Progression of Plaintiff's Condition**

Plaintiff was booked into ACDC on Friday, May 3, 2019. Her intake form noted that she was detoxing from heroin, had overdosed two days earlier, and was experiencing dental pain. [ECF No. 82 at 13.] She was placed on a detox medication regimen and was observed by medical staff multiple times per day over the next ten days.[2]

Beginning May 11th, Plaintiff began submitting grievances related to a developing abscess on the side of her head, filing at least one every few days. *See* ECF No. 82. Her grievances included the following:

- May 11, 2019: complaining of a "HUGE ABCESS[] ON THE SIDE OF MY HEAD THAT KEEPS[ ]GETTING BIGGER AND HURTS REAL BAD I NEED MY TOOTH PULLED OR SOME ANTIBIOTICS[,]" *id.* at 18;

- May 16, 2019: complaining of fever and pain in her ear, *id.* at 21;

- May 20, 2019: reporting "A F[L]UID LIKE SACK ON SIDE OF [HER] HEAD, ABOVE [HER] EAR[,]" and further complaining of fever, severe head pressure, severe nausea and vomiting, dizziness, inability to focus eyes upon standing, swollen right side of face, pain, and the inability to get out of bed, *id.* at 22;

---

[2] In its previous order, the court detailed what was recorded during the ten-day withdrawal monitoring period. *See* ECF No. 118 at 3–6. The court incorporates those facts here without a full recitation.

4

- May 21, 2019: describing "FLUID UNDER [HER] SKIN ABOVE [HER] R[IGHT] EAR" that had been there for four days, and indicating she had placed several sick calls but had not been seen, *id.* at 23;

- May 24, 2019: Plaintiff's final grievance, indicating she had not been seen by a dentist, and she had been taken off pain medications but had not seen a difference in her condition, *id.* at 24.

Following each grievance, Plaintiff was seen by medical personnel—though sometimes not until a day or two later. She was given a combination of medication, including antibiotics, pain medicine, and anti-inflammatories. On May 23rd, Plaintiff was examined by Dr. Williams, who diagnosed a "small hematoma" and prescribed warm compresses and Tylenol. *Id.* at 3, 10.

At approximately 5:40 p.m. on May 24, 2019, a correctional officer at ACDC directed Plaintiff to return to her cell. She refused and was written up for misconduct. Plaintiff was then escorted to B-Max by Defendant Riddell and two other officers. [ECF No. 84-14.]

On May 28, 2019, Plaintiff fainted in her cell and had to be helped to her bunk by Defendant Whitaker and another officer. [ECF No. 82 at 11.] Dr. Williams was notified of the incident and ordered a CT scan to rule out a brain contusion. *Id.* at 4, 11.

Plaintiff received Tylenol on May 29 and 30 for pain and swelling on the right side of her head. *Id.* at 11, 29.

Plaintiff's condition worsened on June 2, 2019. At around 3:30 p.m., she was found unconscious on the floor. *Id.* at 11. After a nurse called her name and rubbed her back, Plaintiff eventually sat up. *Id.* Medical personnel instructed that Plaintiff must have "a buddy in place when she was getting up, she can't get up alone." *Id.* Later, around 6:30 p.m., medical staff were called

5

again because Plaintiff was vomiting, running a fever, feeling dizzy, and generally feeling "weird." *Id.* Following this second incident, she was transported to the hospital, where she was diagnosed with osteomyelitis, subgaleal and epidural abscesses, and severe sepsis. She subsequently underwent a right parietal craniectomy. [ECF No. 1 at 9.]

### B. Defendants Riddell and Whitaker

Defendants Riddell and Whitaker had direct interactions with Plaintiff during her detention at ACDC. Concerns about Plaintiff's deteriorating medical condition and the adequacy of her treatment were also raised by subordinate officers.

Deputy Kimberly Kelley testified she expressed concerns about Plaintiff's care to Defendants Riddell and Whitaker:

> Q.   What kind of issues did you raise up the chain of command?
>
> A.   Complaints that I felt like they weren't doing what they should have been doing to assist an inmate. Obviously with Cassi Rhoads, I brought that issue up to Lieutenant Riddell, I brought that issue up to Lieutenant Whitaker, and their response was, "We cannot overstep Medical. If Medical doesn't want to send her out, we can't force them to do so."

[ECF No. 84-4 at 16–17; *see also* ECF No. 84-4 at 22 (stating that, after raising her concerns with medical staff and helping Plaintiff submit medical requests, she "began voicing her concerns to [her] supervisory team and even offered to take [Plaintiff] to Aiken Regional Medical Center . . . but was told that Cassie didn't need to be seen at a hospital").] Kelley also testified that she directly approached medical staff about Plaintiff's condition and faced backlash from Defendant Riddell for bypassing the proper protocol. *Id.* at 18 (recalling she "actually got backlash from [her] supervisor [Riddell] because she had gone directly to Medical instead of allowing the inmate to submit medical requests through the kiosk like we were supposed to").

Deputy Carla Hill also raised concerns shortly before Plaintiff was hospitalized. Hill testified that she observed a swollen area on Plaintiff's head "the size of a grapefruit." [ECF No. 84-8 at 3–4.] She was alarmed that medical staff attributed the injury to self-infliction, despite never witnessing Plaintiff strike her head: "Medical was saying that she was self-inflicting, and I had never seen her bang her head or hit her head on the floor or the wall." *Id.* at 3; *see also id.* at 6 (testifying Nurse Donna told her Plaintiff was self-inflicting). Hill testified that she relayed her concerns to Nurse Donna and also asked Deputy Lisa Bauer to assess Plaintiff's condition. *Id.* at 3, 9. That same day, Hill reported the swelling and Nurse Donna's comments to Defendant Whitaker:

> Q. Did . . . you report to Whitaker that Nurse Donna was telling you it was self-inflicted?
>
> A. Yes, sir.

*Id.* at 12. According to Hill, Whitaker said she would follow up with medical staff. *Id.* at 11. However, she also questioned whether Hill had properly monitored Plaintiff, to which Hill affirmed she had. *Id.* at 12. Hill estimated this occurred on or around May 28th. *Id.* at 12.

In her own deposition, Deputy Lisa Bauer confirmed Hill had asked her to check on Plaintiff. Bauer observed the swelling and informed Whitaker: "I did notify Lieutenant Whitaker and tell her that I had seen the swelling on the side of her head." [ECF No. 84-6 at 6–7.]

In contrast, Defendant Riddell testified that he no recollection of anyone telling him that Plaintiff had an abscess. [ECF No. 84-10 at 3.]

Defendant Whitaker likewise testified that she did not recall instructing correctional officers to monitor Plaintiff for any swelling or other medical matter, nor did she recall being approached by Bauer or Kelly about Plaintiff's condition. [ECF No. 84-13 at 3–6.]

7

## II. Deliberate Indifference: The *Short* Test

As a pretrial detainee, Plaintiff's deliberate indifference claims are governed by the Due Process Clause of the Fourteenth Amendment, which protects the rights of pretrial detainees to receive adequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("[T]he Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, 'mandates the provision of medical care to [pretrial] *detainees* who require it.'" (emphasis in original) (quoting *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992))).

In *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), the Fourth Circuit clarified the standard for deliberate indifference claims. Under *Short*, the proper test is objective. A plaintiff must allege facts satisfying the following four elements:

(1) they had a medical condition or injury that posed a substantial risk of serious harm;

(2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed;

(3) the defendant knew or should have known

  (a) that the detainee had that condition and
  (b) that the defendant's action or inaction posed unjustifiably high risk of harm; and

(4) as a result, the detainee was harmed.

*Id.* (spacing added).

Prior to *Short*,[3] the Fourth Circuit applied a subjective standard. *See id.* at 603–11 (concluding that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015),

---

[3] *Short* was issued after the ACDC Defendants' motion for summary judgment was fully briefed, but the magistrate judge concluded that the objective standard from *Short* does not impact the arguments submitted by the parties. [ECF No. 112 at 20 n.7.] Since the parties did not have the benefit of *Short* for their briefing and since Plaintiff's claims narrowed significantly after the Report issued because Plaintiff settled with the SHP defendants and elected not to pursue her

abrogated Fourth Circuit's precedent regarding test for pretrial detainee deliberate indifference claims). The subjective component of the prior test required "a pretrial detainee . . . [to] show that the defendant 'knew of and disregarded [a] substantial risk to the inmate's health or safety.'" *Id.* at 609 (quoting *Stevens v. Holler*, 68 F.4th 921, 931 (4th Cir. 2023)). But under either the previous standard or the current standard, "it is . . . not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee. Negligence was not enough before, and it is not enough now." *Id.* at 611–12 (internal citations omitted).

## III.    Analysis

Applying the objective standard in *Short* to the facts here, the question is whether there is a genuine issue of material fact as to whether Defendants Riddell and Whitaker were deliberately indifferent to Plaintiff's serious medical needs. Although the court previously concluded that no such issue existed, there is now a substantial basis to reconsider whether the deliberate indifference standard has been met under the *Short* framework[4]

---

claims against some of the ACDC defendants, their briefing does not fully line up with the issues this court must consider. But the court ultimately concludes what has been presented is sufficient for the court to make its decision.

[4] The court clarifies that the facts it failed to adequately consider in its earlier order *were*, in fact, presented to the court at the time of summary judgment. However, *much* of the evidence Plaintiff attached to her motion for reconsideration was only offered after the summary judgment ruling and the subsequent closure of the case. It is unfortunate that Plaintiff did not provide a more comprehensive presentation of the available evidence during the summary judgment phase, as such a submission would have aided the court's analysis. Although some of the transcripts from Plaintiff's state trial were not available at the time, the substance of the relevant evidence clearly was. The court agrees with Defendant that it would be improper to consider this newly submitted evidence now. *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 326 (4th Cir. 2017) ("We have consistently affirmed denials of motions to reconsider summary judgment ruling where the motion is merely a vessel for the very evidence that was initially lacking in opposition to summary judgment."). If the court's current conclusion—that this case presents a genuine issue of material fact—rested on this newly submitted evidence, the court would be constrained to once again grant summary judgment for Defendants.

### A.    Deliberate Indifference

#### 1.    The First *Short* Factor

The magistrate judge assumed, and the parties do not meaningfully dispute, that Plaintiff had a serious medical need that was obvious to the ACDC Defendants. *See* ECF No. 112 at 24. To the extent Defendants Riddell and Whitaker now contest this factor, the court determines there is, at a minimum, sufficient evidence to create a genuine issue of material fact under the first *Short* factor. The record reflects Plaintiff exhibited a progressively enlarging protrusion on her head, along with symptoms including pain, dizziness, fainting, nausea, and vomiting—clear indications of a serious medical condition.

#### 2.    The Second *Short* Factor

The court next considers whether Defendants Riddell and Whitaker intentionally, knowingly, or recklessly acted—or failed to act—in response to the risk posed by Plaintiff's condition.

The magistrate judge concluded there was no evidence suggesting the ACDC Defendants acted unreasonably, even assuming Plaintiff's condition was obvious. *See* ECF No. 112 at 25. In support of this conclusion, the magistrate judge relied on well-established case law holding that non-medical personnel may defer to the judgment of medical staff who are treating a pretrial detainee. *See, e.g.*, *McNeal v. Hutchinson*, No. 2:21-cr-3431-JFA-MGB, 2022 WL 17418060, at *10 (D.S.C. Sept. 19, 2022) ("As non-medical personnel, these Defendants were entitled to rely on the medical staff's expertise, diagnosis, and treatment plan."), *Report and Recommendation adopted by* 2022 WL 16631042 (D.S.C. Nov. 2, 2022), *aff'd* No. 22-7319, 2024 WL 1366553 (4th Cir. Apr. 1, 2024); *Annarelli v. Clarke*, No. 7:20-cv-00261, 2022 WL 4798345, at *14 (W.D. Va. Sept. 20, 2022) ("It was not [the non-medical defendants' role] to determine that something

10

additional should have been done by a physician or that more treatment was warranted."), *aff'd* No. 22-7135, 2023 WL 5348337 (4th Cir. Aug. 21, 2023).

This principle remains an important consideration. The law does not require correctional officers to override or second-guess a medical diagnosis—such as mistaking an abscess for a hematoma. But the law does require that correctional officers act reasonably in light of what they know. And while they need not override a physician's orders, they may not ignore an inmate's worsening condition, particularly when they know or should know that the inmate's access to care is impaired. As courts in this Circuit have recognized "to hold a non-medical provider liable [for a failure to provide an inmate medical treatment], the plaintiff must show that the defendant was personally involved with a denial of treatment, deliberately interfered with a doctor's treatment, or tacitly authorized or was indifferent to the prison physician's misconduct." *Harvey v. Whitlock*, No. 7:18-cv-00097, 2021 WL 3852731, at *10 (W.D. Va. Aug. 27, 2021) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)).

Here, when viewing the facts in the light most favorable to Plaintiff, there is sufficient evidence to create a genuine issue of material fact as to the second *Short* factor. The record demonstrates Plaintiff plainly had a swollen protrusion on her head that continued to worsen over her 30-day stay at ACDC. Initially, she was closely monitored by medical personnel while detoxing from heroin, and she was seen by medical personnel after filing grievances. But on May 24, 2019, Plaintiff was moved to B-Max—a restrictive housing unit—where she could no longer submit grievances through the electronic kiosk. *See* ECF Nos. 84-4 at 3–7, 21; 84-7 at 4. Defendant Riddell personally escorted Plaintiff to B-Max, and Defendant Whitaker responded to a medical emergency in her cell, so both Defendants were aware of her location and limited access to medical request procedures. Further, after Plaintiff was moved to B-Max, multiple subordinate correctional

officers reported their concerns directly to Defendants Riddell and Whitaker about Plaintiff's worsening condition. These concerns included observations of severe swelling, fainting episodes, and the fact that medical personnel attributed her condition to self-inflicted behavior despite the officer's own observations to the contrary. One officer even offered to take Plaintiff to the hospital herself. There is no evidence that either Riddell or Whitaker contacted medical staff on Plaintiff's behalf or took other action, despite their knowledge that Plaintiff was isolated, deteriorating, and unable to file grievances. *See Pickens v. Lewis*, No. 1:15-cv-275-FDW, 2018 WL 2187051, at *10 (W.D.N.C. May 11, 2018) ("[P]rison officers 'without medical training are responsible for seeing that prisoners are attended to by medical professionals. They are not responsible for determining the course of treatment or for overruling the opinions of those professionals.'" (quoting *Pulliam v. Superintendent of Hoke Corr. Inst.*, No. 1:05CV1000, 2007 WL 4180743, at *5 (M.D.N.C. Nov. 20, 2007))).

In sum, the evidence—particularly that Defendants Riddell and Whitaker knew Plaintiff was segregated in conjunction with her medical deterioration, had no way to file grievances, and was exhibiting clear signs of severe illness—creates a genuine issue of material fact as to whether they intentionally, knowingly, or recklessly failed to act despite a serious medical risk. Although much of this evidence was previously presented to the court, the court did not fully consider its weight and implications. Failing to do so would result in manifest injustice. *See Ward v. Kicinski*, No. 4:17-cv-00367-DCC, 2018 WL 3389987, at *1 n.3 (D.S.C. July 12, 2018) ("Manifest injustice occurs where the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . .'" (quoting *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012))).

### 3. The Third *Short* Factor

As noted in the court's previous order, there is some overlap between the second and third *Short* factors—with the second factor's focus on whether a defendant's action or inaction was appropriate and the third factor's focus on what a defendant knew or should have known.

There is evidence that Defendants Riddell and Whitaker were aware of Plaintiff's deteriorating condition. Subordinate officers directly reported concerns to them, and both Defendants interacted with her.

Additionally, a reasonable jury could conclude that Defendants knew—or should have known—that their inaction posed an unjustifiably high risk of harm. For instance, they had been told that medical staff had attributed the abscess to self-harm, despite officers reporting no evidence of such behavior. Furthermore, by May 24th, Defendants knew Plaintiff had been moved to B-Max, where she no longer had access to the grievance kiosk, the standard process for requesting medical attention. While non-medical officers are generally entitled to rely on the expertise of medical staff, that deference does not apply when the detainee's access to medical treatment is obstructed and when credible, repeated concerns are raised regarding the adequacy of that care. *See Cooper v. Dyke*, 814 F.2d 941, 945 (4th Cir. 1987) (holding "government officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs[,]" particularly where "[c]ontinued complaints . . . or the manifest symptoms . . . would have put defendants on notice that additional care was required").

Given the combination of Plaintiff's worsening symptoms, her inability to seek care through the usual channels, and Defendants' direct knowledge of both, there is at least a genuine

13

issue of material fact as to whether they knew or should have known that their inaction created an unjustifiably high risk of harm.

### 4. The Fourth *Short* Factor

As to the fourth *Short* factor—whether Plaintiff was harmed by Defendant Riddell and Whitaker's inaction—the court finds Defendants have failed to meet their burden.[5] A jury could reasonably conclude that Defendants' failure to intervene contributed to or exacerbated this harm.

### B. Qualified Immunity

The court previously concluded Defendants Riddell and Whitaker were entitled to qualified immunity. But, based on a fuller consideration of the evidence previously presented by Plaintiff, the court reconsiders and changes its position.

Qualified immunity is a two-step inquiry. *See Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005). The court must ask "'whether a constitutional right would have been violated on the facts alleged' by the plaintiff." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). The court must also ask whether the right allegedly violated "was clearly established at the time of the alleged violation." *Id.* (citing *Saucier*, 533 U.S. at 200). And these questions can be asked in any order the court wishes. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "[W]hile the purely legal question of whether the constitutional right at issue was clearly established 'is always capable

---

[5] Plaintiff argues she never had the opportunity to present evidence on causation because it was not raised in Defendants' motion for summary judgment. [ECF No. 122 at 21.] But Plaintiff objected to the magistrate judge's silence on this factor, describing her injuries and stating that "there can be no credible argument the Plaintiff was not harmed by Defendants' inaction." [ECF No. 115 at 8.] As this court must address an objecting parties' specific objections, the court did so, finding Plaintiff suffered harm but noting the dearth of evidence from which the court could find Plaintiff's harm *resulted* from Defendants' inaction. Notwithstanding Plaintiff's invitation to consider this factor knowing she had not presented evidence on it, the court agrees that Defendants have the burden on summary judgment, and they have not met their burden as to the fourth *Short* factor.

14

of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham*, 412 F.3d at 559 (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

In the Fourth Circuit, the violation of a constitutional right and the denial of qualified immunity usually go hand-in-hand. *Short*, 87 F.4th at 615 (explaining that "under [Fourth Circuit] precedent, qualified immunity is generally not available at all for deliberate indifference claims" since the Fourth Circuit has held "'when plaintiffs have made a showing sufficient to demonstrate an intentional violation of the Eighth Amendment, they have also made a showing sufficient to overcome any claim to qualified immunity'" (quoting *Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022))).

But the timing of this case presents a unique situation because *Short* had not yet been decided at the time of Defendants' conduct. And the qualified immunity analysis "requires looking to the law *at the time* of the conduct in question." *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021) (emphasis in original). In 2019, "[a]n official [was] deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Other courts in this Circuit have found that, for activity that pre-dates *Short*, officials are entitled to qualified immunity absent an adequate showing on the subjective prong of the prior test—"[b]ecause . . . plaintiff fails to show any individual defendant acted with a culpable state of mind, reasonable officers in defendants' positions would not have recognized that their actions violated plaintiff's clearly established constitutional rights." *Wright v. Granville Cnty.*, No. 5:20-CT-03362-M, 2024 WL 1376486, at *21 (E.D.N.C. Mar. 29, 2024); *see also Patterson v. Stanly Cnty. Det. Ctr.*, 2024

15

WL 1936499, at *10–11 (M.D.N.C. May 2, 2024) (finding that to preclude qualified immunity pre-*Short* it was not enough that a defendant "*should have* recognized their actions were inappropriate; they actually *must have* recognized their actions were insufficient" and their response "must be more than merely negligent or simply unreasonable").

Viewed in the light most favorable to Plaintiff, the same evidence that supports her *Short* claim also creates a genuine issue of material fact as to whether Riddell and Whitaker subjectively knew of Plaintiff's serious condition and chose not to act. The record includes repeated warnings from subordinate officers, visible signs of Plaintiff's deterioration, and knowledge of her inability to access medical help. A jury could reasonably infer that Defendants appreciated the seriousness of the risk and consciously disregarded it. Accordingly, under either the pre-*Short* subjective standard or the current objective standard, Defendants Riddell and Whitaker are not entitled to qualified immunity.

## CONCLUSION

The court concludes Plaintiff has met her burden under Fed. R. Civ. P. 59(e). Accordingly, the court **GRANTS** her motion for reconsideration, ECF No. 122. The court vacates the portion of its earlier order, ECF No. 118, granting summary judgment to Defendants Riddell and Whitaker. The court hereby **DENIES** summary judgment, ECF No. 81, as to Defendants Riddell and Whitaker.

**IT IS SO ORDERED.**

July 1, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge